Berridge v. Gaylord.

No. 22,793.

F. G. BERRIDGE, *Appellant*, v. CORA M. GAYLORD, *Appellee.*

SYLLABUS BY THE COURT.

NOTE AND MORTGAGE—*Made Payable to Stranger to Evade Taxation— Subsequently Assigned to Real Owner of Note—Right of Recovery.* Where one who makes a loan upon real estate causes the note and mortgage securing it to be made payable to a stranger to the transaction, for the purpose of evading the payment of taxes, that fact does not constitute a defense to the mortgage, in an action against the mortgagor brought in the name ·of ·the· real owner, who has in the meantime taken an assignment from the nominal mortgagee.

Appeal from Nemaha district court; WILLIAM I. STEWART, judge. Opinion filed December 11, 1920. Reversed.

*T. D. Humphreys,* of Topeka, for the appellant.

*W. P. Waggener, J. M. Challiss,* and *Walter E. Brown,* all of Atchison for the appellee.

The opinion of the court was delivered by

MASON, J.: F. G. Berridge brought an action against Cora M. Gaylord upon a note and mortgage originally executed by her to Joseph F. White and by him assigned to the plaintiff. Judgment was rendered for the defendant cancelling the mortgage upon the ground that the loan secured by it had been made by the plaintiff, who caused White to be named as payee for the purpose of enabling him to avoid the payment of taxes. The plaintiff appeals.

The correctness of the judgment depends upon the interpretation of the decision and opinion in *Sheldon v. Pruessner,* 52 Kan. 579, 35 Pac. 201, upon the authority of which it is obviously based. That case has sometimes been regarded as holding that if the owner of a mortgage places the. formal legal title to it in another for the purpose of evading the payment of taxes he is thereby prevented from collecting it and the act constitutes a defense to any action for its enforcement. The decision however goes no further·than to hold that if the mortgagee while retaining the beneficial ownership makes a mere colorable assignment in order to escape the payment of

taxes and a foreclosure is attempted in the name of the assignee no recovery can be had *in that action.* Its limited scope in this regard was recognized in a note published shortly after its rendition, reading as follows:

"The decision that a transfer of a mortgage to evade taxation is so far contrary to public policy that the transferee cannot enforce it for the benefit of the transferrer seems to be a novel one. The exact effect of such a transfer on the rights of the parties is left somewhat indefinite. Whether the transferee could enforce the mortgage if he chose actively to assert his rights for himself, and whether on the other hand the transferrer could in his own name enforce the mortgage are important questions left open in the case." (Note, 22 L. R. A. 709.)

The ordinary rule is that the holder of the formal legal title of a note may maintain action upon it although he has no beneficial ownership and must account to his assignor for the proceeds. The Sheldon-Pruessner case has been referred to as illustrating a situation in which the rule does not apply because of the transfer having been made in bad faith (*Greene v. McAuley,* 70 Kan. 601, 606, 79 Pac. 133)—a reference which shows the effect heretofore given to the case by this court. In an action to foreclose a lien evidenced by an instrument in the form of a deed, which had been executed to replace a mortgage, the court applied this interpretation by holding that no defense was stated by an answer which alleged that one of the purposes for which the plaintiff took the deed was to avoid the payment of taxes. In the opinion it was said:

"The plaintiff being the holder of the indebtedness and the real party in interest, the defendants cannot rely upon the case of *Sheldon v. Pruessner,* 52 Kan. 579. In that case the mortgage had been assigned in order that the mortgagor might avoid the payment of taxes. The assignment was held to be fraudulent, and it necessarily followed that the assignee was not the real party in interest, and it was held that he could not maintain the action." (*Johnson v. Harvey,* 83 Kan. 471, 472, 112 Pac. 108.)

In *Drexler v. Tyrrell,* 15 Nev. 114, it was held (one of the three justices dissenting) that a mortgage which is made in the name of some one other than the lender of the money, in order to escape the payment of taxes, is wholly void—the position taken by the defendant here. That case, with others, was cited in the opinion in *Sheldon v. Pruessner,* in support of a familiar general proposition quoted from a California decision.

Berridge v. Gaylord.

Such citation of course did not imply the adoption of the full doctrine of the Nevada case, which may have been influenced by a local statute and so far as we have observed has never met with full acceptance elsewhere except in a dissenting opinion (*Brown v. Newell,* 64 S. C. 27, 73) and in an editorial in a law journal (55 C. L. J. 121, 201, 261), while it has been expressly disapproved by the courts of a number of jurisdictions. (See the following cases and the citations therein: *Callicott v. Allen,* 31 Ind. App. 561; *Murray v. White et al.,* 42 Mont. 423, 437, 438, and *Alter v. Clark,* 193 Fed. 153—a district of Nevada case.) In the two state cases just cited it was mistakenly assumed that *Sheldon v. Pruessner* is to the same effect as *Drexler v. Tyrrell.* The basis of the rejection of the Nevada doctrine that an effort to escape taxation thereon nullifies a mortgage is shown in these quotations:

"As we think, the opinion [in the Nevada case] fails to appreciate that there is no illegality in the contract of loan; and that the question is only whether one who has borrowed money shall repay it." (*Nichols v. Weed Sewing Machine Co.,* 27 Hun. [N. Y.] 200, 206.)

"The only taint in the transaction was the intended fraud upon the revenue laws of the state. For this intended fraud the court upheld the mortgagor in refusing payment of the mortgage; they upheld him in a monstrous injustice, when the revenue laws of the state provided proper and ample punishment for an evasion of them by criminal prosecution." (1 Jones on Mortgages, 7th ed., p. 1016, note.)

"When the revenue laws provide ample punishment for the evasion by taxpayers of their just dues, it would seem a monstrous injustice to permit a mortgagor to defeat the payment of his debt by bringing any such issue into a suit brought to foreclose his mortgage. The alleged turpitude of the mortgagee furnishes no ground for a discharge of the mortgagor from the payment of his just debt." (*Crowns v. Forest Land Co.,* 99 Wis. 103, 107.)

"We think the rule is quite well settled that courts will not hold a contract void as against public policy unless the contract itself requires that something be done which adversely affects the public welfare, or is forbidden by law or the consideration is illegal or immoral." (*Murray v. White et al.,* 42 Mont. 423, 438.)

"In my judgment, the doctrine of public policy cannot be invoked by the defendant to discharge her from the payment of her debt, which is justly due. She has received the full consideration of a contract which in itself did not require the doing of anything wrong, and which was not forbidden by the laws of the state. We must not confuse the contract itself with a collateral or incidental purpose of the mortgagee, which, though wrong, yet should not be a bar to the enforcement of the agree-

ment of the parties. Although the contract itself may have enabled the plaintiff to escape payment of taxes, still the intention of the complainant formed no part of the consideration, and the law will not refuse enforcement. I cannot agree with the argument that it becomes impossible to separate the taint surrounding the contract from the contract itself; nor do I believe that it follows that the court, in enforcing the contract, affirms an illegal stipulation thereof. The fallacy of this reasoning lies in regarding the purpose of the mortgagee to evade taxation as an element of the contract." (*M'Kinnon v. Waterbury*, 136 Fed. 489, 490.)

In the present case the action was brought by the beneficial owner of the mortgage, whether he furnished the money for the loan in the first place, or paid it to White for the assignment. We think that both upon reason and authority he is entitled to enforce the lien by an action in his own name even upon the assumption that he was at all times the real creditor and caused the note and mortgage to be executed to White merely to evade the payment of taxes.

The plaintiff testified that White advanced the money for the loan and that he afterwards reimbursed him, and that he neither evaded nor sought to evade the payment of taxes. He contends that there was no evidence to support the finding that he was the original creditor or that his purpose in introducing White into the deal was to escape taxation. In view of the conclusion already announced it is not necessary to pass upon this contention.

The judgment is reversed and the cause remanded with directions to render judgment for the plaintiff.